UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2005 MAR 28 P 3:08
U.S. DISTRICT COURT
DISTRICT OF MASS

BRENT E. WOODFIELD, M.D. and
LISA W. WOODFIELD
Plaintiffs

v.

UNITED STATES OF AMERICA
Defendant

Civil Action No. 04-12483-NMG

**PLAINTIFF'S OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

Now come the Plaintiffs, Dr. and Mrs. Woodfield, in the above-captioned matter and submit this Opposition and supporting Memorandum, set forth below.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS**

**INTRODUCTION**

As explained herein, the United States' Motion to Dismiss should be denied because the first three reasons presented by the United States as purported bases for dismissal are framed in self-serving and biased perspectives and – given the required judicial standard of review – are legally insufficient to sustain said Motion to Dismiss.

## I. The Plaintiffs' Claims Are Not Barred By the Governing Statute of Limitations, 28 U.S.C. § 2401(b).

Although the United States asserts that the Plaintiffs' Tort Claims are barred by the Federal Tort Claims Act (FTCA) Statute of Limitations claiming that the Plaintiffs (the Woodfields) did not properly present their claims in writing within two years after they accrued, as is carefully laid out within the Plaintiffs' Complaint (at Paragraphs 17 and 18) and as was highlighted in the Plaintiffs' original Standard Form 95 Claim duly and properly submitted under the Statute, it was not until December 7, 2001 that the Woodfields first discovered their cause of action – which discovery necessarily tolled the commencement of the two-year presentment limitation period up through December 7, 2003. As the United States concedes, the Woodfields submitted their Claim on December 5, 2003 within the time frame allowed by the appropriate FTCA Statute of Limitations.

It is not disputed that under the circumstances the law governing the application of the so-called "Discovery Rule" would be that of the Commonwealth of Massachusetts. As enunciated in Cambridge Plating Co., Inc. v. Napco, Inc., 991 F.2d 21 (1st Cir.1993), the Massachusetts "Discovery Rule" provides that regardless of the actual time of a breach or injury, a cause of action does not accrue until a plaintiff – such as the Woodfields here – discovers, or reasonably should have discovered, that she/they may have been injured due to the Defendant's conduct; delayed knowledge may be either the fact of the injury or the cause of the harm. The Massachusetts discovery rule delays the running of the Statute of Limitations while the facts, as distinguished from the legal theory for the cause of action, remain inherently unknowable to the

injured party. Catrone v. Thoroughbred Racing Associations of North America, Inc., 929 F.2d 881 (1st Cir.1991).

In this instance, the Woodfields had no means to have even suspected that their cause of action accrued until on and after December 7, 2001 and they acted entirely within the strictures of the Statute of Limitations requirements of the Federal Tort Claims Act once they knew that the "cause of their harm" was the Seattle, Washington's Department of Health and Human Services' Office for Civil Rights ("OCR") failure to perform and/or pursue the most fundamentally requisite steps for a properly effected and statutorily-mandated inquiry.

For the United States to suggest that the discovery rule cannot apply under these circumstances is simply self-serving and there is no supportable basis in fact or at law – *a fortiori* given the standard for this Court's review of a Motion to Dismiss – to allow the United States contention to stand.

## II. Plaintiffs State a Claim Under Washington State Law

Again, contrary to the contentions of the United States, the Woodfield Complaint clearly states a claim under Washington State Law as it is based in negligence. Simply because the United States characterizes the multi-faceted negligence Counts (Counts I through IV) of the Complaint as comprising a "negligent investigation" action hardly allows the United States to sidestep all conceivable liability here. Count I - Negligence of the Plaintiffs' Complaint as framed within Paragraphs 78, 79 and 80 presents *at least* six (6) separate bases upon which the Woodfields' negligence claim is adduced which cannot reasonably be summarily "lumped together" as the United States suggests into the supposed tort of "negligent investigation." The tort alleged is "negligence" which addresses not only the investigation conducted by OCR *but*

*numerous other activities* which OCR undertook or failed to undertake in response to the Woodfields' properly submitted Claim.

Obviously, the State of Washington recognizes the Common Law Tort of Negligence. Just as the United States accuses the Woodfields as "characterizing" their suit "as simple negligence," the United States, again in a self-serving manner, purports to take all the allegations set forth in the Negligence Counts of the Woodfield Complaint and characterize them – for its own convenience – as the Tort of "Negligent Investigation" which has certainly never been recognized – per se – as a Common Law cause of action in tort! Accordingly, the Plaintiffs' claims in Counts I through IV are clearly cognizable under the Federal Tort Claims Act § 1346(b).

**III. The Discretionary Function Exception to the FTCA Does Not Bar the Plaintiffs' Claims**

Contrary to the assertions of the United States, the Woodfields' claims do survive the two-part test used to determine whether conduct falls within the discretionary function exception. See Ayer v. United States, 902 F.2d 1038, 1042 (1st Cir.1990). In the first instance addressing the two-part test this Court must consider whether here "the action is a matter of choice for the acting employee." See Berkovitz v. United States, 486 U.S. 531, 536 (1988); United States v. Gaubert 499 U.S. 315, 322-23 (1991). The requirement of a so-called "discretionary act" are not fulfilled if a "Federal Statute regulation or policy specifically prescribes a course of action for an employee to follow." See Berkovitz, 486 U.S. at 536 . The second part of the test involved determines whether the challenged conduct involves an element of judgment or discretion and it must be determined whether "that judgment is of the kind that the discretionary function

exception was designed to shield." See Gaubert, 499 U.S. at 322-23.

Applying the foregoing to the case at bar it is clear that the two-part test is not satisfied. Indeed, an investigation which would necessarily involve examination of the critical and determinative documentation involved to make a fair and reasonable decision was specifically required by 28 C.F.R. § 35.172 and such investigation was never properly effected. Once the OCR received Dr. Woodfield's Complaint it was – pursuant to 28 C.F.R. § 35.172 – required to "investigate [the] complaint" and "issue to the complainant . . . a Letter of Findings." However, the investigation required by law was never properly undertaken and, contrary to the assertions of the United States, as set forth in the Plaintiffs' Negligence Count at Paragraph 79, the Complaint does allege – inter alia – that the OCR issued an improper Letter of Finding (LOF). Indeed, the Woodfields specifically allege at Paragraph 79 of their Complaint that the United States of America, or, OCR's negligence included: "D. Failure to Frame Issues Properly in the LOF (Letter of Findings); "E. Failure to Render a Fair, Just, Complete or Corroborated Decision Due to Inherent Failure to Acquire All the Facts Required for an Impartial, Informed and Balanced Decision"; and, "F. Failure to Actually Corroborate Document and/or Elucidate Points Key Points Set Forth as Conclusory Statements in the LOF."

With regard to the second part of the test, stated bluntly, the discretionary function exception was not meant to serve as a shield to protect an employee agency such as the OCR to simply not do its job! Were that the case, any agency such as the OCR could simply do nothing, claim that it had done something, and escape any responsibility for an utter failure to meet its responsibilities.

It is crucial to note that the United States Supreme Court has emphatically rejected the

assertion that "the [Discretionary Function] exception precludes liability for any and all acts arising out of the regulatory programs of federal agencies." *Berkovitz v. United States*, 486 U.S. 531, 538 (1988). Instead, as the First Circuit noted in *Irving v. United States*, 909 F.2d 598, 600 (1st Cir. 1990), *after remand, vacated and remanded for other reasons*, 49 F.3d 830 (1st Cir. 1995), "the inquiry focuses on the permissible range of action available to the government employee allegedly at fault."

Quoting Berkovitz extensively in Irving, the First Circuit noted:

> "[I]f the act simply does not involve the exercise of [policy] judgment," or if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," § 2680(a) does not apply (citation omitted). Even when the challenged action is the product of an employee's permissible use of judgment, a suit is barred only if that judgment "is of the kind that the discretionary function exception was designed to shield." The basis for the discretionary function exception was Congress' desire to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort".

Irving v. United States, 909 F.2d at 600.

Whether a given case comes within this exception must be decided on a case-by-case basis, by examining the facts of each case.

To contend that the Irving v. United States, 909 F.2d 598, 600 (1st Cir. 1990), decision stands for the proposition that the OCR's alleged negligence must be "shielded" or that it would be judicial "second-guessing of legislative and administrative decisions grounded in social, economic and political policy" to review the outcome of, in this instance, the OCR's purported decision, where the OCR claimed to have performed an investigation but by express admission of record in fact has not done so, is simply a fundamentally unfair and untenable position which

requires the denial of the United States' Motion.

For the foregoing reasons the Plaintiffs respectfully request that the Defendant's, the United States', Motion to Dismiss be forthwith denied.

Respectfully submitted,
By and on Behalf of the Plaintiffs,
By

Anthony R. Bott
BBO #050540
ANTHONY R. BOTT, P.C.
8 Beach Road
Post Office Box 1137
East Orleans, MA 02643
(508) 240-2700

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail ~~(by hand)~~ on March 27th, 2005

7004 0550 0001 1636 5364

FILED
CLERKS OFFICE
2005 MAR 22 P 3:11
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS FRAZIER,
Appellant,

v.

UNITED STATES OF AMERICA,
Appellee,

Civil No. 04-40048-NMG

PETITION TO EXTEND THE TIME IN WHICH TO FILE A BRIEF IN SUPPORT OF REQUEST FOR THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY, 28 USC § 2253

COMES NOW, Thomas Frazier, the appellant in the above referenced proceeding, hereby requests an extension of time in which to file a "Brief" in support of a request for the issuance of a Certificate of Appealability, pursuant to 28 U.S.C. § 2253, following the denial of the United States District Court, for the District of Massachusetts, of a petition for a writ of habeas corpus, 28 U.S.C. § 2255, dated February 1, 2005 (Order enclosed) upon the following grounds:

1. On April 5, 2004, the appellant filed a motion to vacate, set aside or correct a sentence, pursuant to 28 USC § 2255, based upon the ground that a prior conviction in the State of Massachusetts was vacated, which would result in a different guideline range. That prior conviction stemmed from a prior offense(s) dated August 28, 1997, in which the petitioner pled guilty in the Dudley Massachusetts State Court, to committing assault and battery on both May 18, 1997 and July 29, 1997; and for which both cases were consolodated and the petitioner received one year terms respectively, concurrent to one another.

2. Both offenses concerned a domestic disturbance which involved the petitioner's, then girlfriend, Ms. Kimberly Deschenes. Each case was assigned a different Docket Number,

(May, 1997 incident "9764CR1735A"); and (July 29, 1997 incident "9764CR23968 A&B").

3. The petitioner subsequently filed a post-conviction motion to withdraw sufficient facts as to both prior related and consolodated prior convictions (See Affidavit in Support), made pursuant to Massachusetts Rule 30(b). On July 24, 2003, the presiding Judge of the Dudley District Court (Snider, allowed that motion on September 25, 2003, and the matter was dismissed for lack of prosecution on the Commonwealth's recommendation. (See District Court Docket allowing motion).

4. Subsequently, and according to the petitioner's belie that both prior convictions were dismissed, the ensuing motion pursuant to 28 USC § 2255 was filed, requesting that the instant Federal sentence that was imposed, be modified based upon the dismissal Order.

5. On February 1, 2005, the United States District Court correctly held that only one of the prior convictions were vacated; thus, the petitioner's sentence would not be effected.

Instant Argument

6. The petitioner, on the 20th day of March, 2005, moved by motion for clarification of the prior September 25, 2003 ruling; asserting that the petitioner originally contested that both prior convictions were unconstitutional, and that the Court erroneously dismissed only one conviction. (See Motion for Clarification to Dudley District Court).

7. The petitioner asserts that a continuance of 45 days is needed in order o receive verification from the Dudley District

Court, prior to submitting the request for the issuance of a Certificate of Appealability, and that due to time constraints placed upon the petitioner by virtue of the Rules of this Court in relation to the filing of the Brief in Support; that an extension of time in which to file the "Brief" be granted in the interests of justice.

8. Moreover, the petitioner asserts that if an extension is not granted, once the pending clarification is made, a new petition for relief will have to be filed; thus causing additional costs, fees and other associated matters to this Court. Hence, a continuance is vital and needed to receive the clarified ruling.

March 21, 2005

Respectfully,

[signature]
Thomas Frazier

To: AUSA

[illegible]

[illegible], ss. [illegible] COURT [illegible] THE COMMONWEALTH [illegible]

COMMONWEALTH OF MASSACHUSETTS

v.

THOMAS FRA[illegible]ER,
Defendant.

AFFIDAVIT OF [illegible]

THOMA[illegible] FRA[illegible]ER, [illegible] according to [illegible] U.S.C. § 1746, [illegible] states [1]

1. I am the [illegible] in the [illegible] case.

2. On August [illegible] 199[illegible] [illegible] in the [illegible] (Rap [illegible], J.). [illegible] pleaded [illegible] to a compl[illegible]int charging [illegible] assault and [illegible] KIMBERL[illegible] A DESCHENE[illegible]," in [illegible] of G.L. c.265, § 13[illegible], on [illegible] 18, 1997. [illegible] that I [illegible] did the [illegible], [illegible] stole "property [illegible] [illegible], [illegible].

---

1/ [illegible] am a federal prisoner [illegible] [illegible], there [illegible] no not[illegible] public[illegible] available. Section 1746 allows federal prisoners [illegible] to the truth of documents under penalty of [illegible]jury. I respectfully request that the Court allow [illegible] to utilize § 1746 in lieu of other options not available to me.

[illegible] It is my recollection that my [illegible] in [illegible] was very brief. [illegible] and assured me that I [illegible] had worked out a [illegible] in which I would in exchange for my guilty plea be given a one year [illegible] sentence, [illegible]. As I had [illegible] Mr. Bowen told [illegible] I would be [illegible] that this [illegible] Although I had [illegible] to take the case to trial, because Ms. Deschenes, my girlfriend [illegible] charge.

[illegible] that it was [illegible] responsibility for the [illegible] the program." [illegible] the judge, the [illegible] about [illegible] and then asked if I [illegible] did. It is my distinct recollection that my lawyer and the prosecutor [illegible] the judge that they wanted to "stipulated" to the [illegible] the judge said that doing so would [illegible] guilty plea,

and the sentence was [illegible].

5. [illegible] to me, nor did [illegible] to me [illegible] did not know [illegible] procession, [illegible] was [illegible].

6. [illegible] these cases [illegible], my federal attorney, [illegible] that he had been [illegible] transcript of my guilty [illegible] on the proceeding [illegible] 2000, Mr. [illegible] transcript [illegible] transcript).

7. In August, 2000, [illegible] transcript [illegible] "tapes [were] only [illegible] Attachment [illegible]

8. [illegible] courts violated the [illegible] in Henderson v. Mo[illegible], and Commonwealth v. Co[illegible] [illegible] that the record [illegible] the defendant [illegible] him. [illegible] further [illegible] transcript, [illegible] requires a finding [illegible] burden to prove [illegible] voluntarily [illegible] 426 [illegible] 857, 860 (1998) [illegible] burden is Commonwealth [illegible] [illegible] defendant).

9. As to the [illegible] establishing an on-the-record [illegible] of the defendant's understanding [illegible] the charges (as required by Henderson), the [illegible] prejudice. See [illegible] (2001) [illegible] 49 Mass. App. Ct. [illegible] courts have held [illegible] in one of three ways: (1) [illegible] judge explaining [illegible]

[illegible] ...regulations ... in that [illegible] the elements ... [illegible] ... colloquy ... [illegible] *Zandy*, [illegible] Mass. [illegible] Mass. App. Ct. at [illegible] ... did not [illegible].

1[illegible]. It is clear [illegible] charges involved in this case [illegible] ... Mass. App. Ct. at 12 [illegible].

1[illegible]. The fact that [illegible] have been lost and are [illegible] to the [illegible], citing *Commonwealth* [illegible] 2002). The record [illegible] ... two and one-half [illegible] records under Rule 211 [illegible].

[illegible] (20 [illegible] proce[illegible] procedu[illegible] violations [illegible]

12. I [illegible] prejudice fr[illegible] these [illegible] conviction[illegible] they have be[illegible] standing in [illegible] federa[illegible] taking place [illegible] Accordingly, [illegible] these convict[illegible]

SIGNED [illegible] 1746, THIS ___ DAY OF [illegible]

[illegible]

[illegible]

[illegible] Plaintiff

CIVIL ACTION

NO. 04-[illegible]

[illegible] of America
Defendant

[illegible]

In acc[illegible]ance with [illegible]

[illegible] dismissed.

By the [illegible]

[illegible]
Date

[illegible]
Deputy Clerk

[illegible]

BY CERTIFIED [illegible]

July 14, 200[illegible]

Clerk
Dudley Distr[illegible] Court
[illegible]97 West [illegible]
Dudley, MA 0[illegible]

Re: [illegible]

Dear Sir/Madam,

In reference to [illegible] seeking copies of [illegible].

In September-October [illegible] an attorney appointed [illegible] federal matter, [illegible] of the August 2[illegible] in this case. [illegible] that no transcript [illegible] because [illegible] missing or lost.

In August, [illegible] but was told that [illegible] they kept for [illegible] years (see attached). [illegible] this means the tape[illegible] no longer available.

However, I would [illegible] correspondence [illegible] in your file, [illegible] reporter, so that I [illegible].

If you [illegible] this information, I would be [illegible].

Very truly yours,

[signature]

Thomas Frazier

encl.

cc: file.

[illegible]

[illegible]

[illegible], 20[illegible]

[illegible]

[illegible]

[illegible] September 28, [illegible], Ju[illegible] [illegible] Dudl[illegible] Distri[illegible] Court [illegible]. Th[illegible]

[illegible]

[illegible] the F[illegible] level.

[illegible]

[illegible]